UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

CAIN FIELD NURSERY; BONITA FARM    )
NURSERY; TRAVIS WANAMAKER;          )
ANTHONY WANAMAKER,                   )
AND CATRENIA WANAMAKER,             )
                                     )
                                     )
            Plaintiffs,              )
                                     )     Case No. 4:09-cv-78
v.                                   )
                                     )     Judge Mattice
                                     )
FARMERS CROP INSURANCE ALLIANCE,    )
INC., GREAT AMERICAN INSURANCE       )
COMPANY;  FEDERAL CROP INSURANCE     )
CORPORATION; RISK MANAGEMENT         )
AGENCY; AND UNITED STATES            )
DEPARTMENT OF AGRICULTURE,           )
                                     )
            Defendants.              )

## MEMORANDUM AND ORDER

Before the Court is a Motion to Dismiss [Court Doc. 17] submitted by Defendants Farmers Crop Insurance Alliance, Inc. and Great American Insurance Company. Defendants assert that all claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons explained below, Defendants' Motion to Dismiss [Court Doc. 17] will be **DENIED**.

## I.      STANDARD OF REVIEW

Although Defendants have styled their Motion as a Motion to Dismiss, Plaintiffs contend that the Fed. R. Civ. P. 12(b)(6) standard is inappropriate because the Motion speaks directly to the substantive issues in the case. (Court Doc. 22, Pls.' Resp. 6.)  In their Reply, Defendants concede that the Court may treat the Motion as a Motion for

Summary Judgment instead.  (Court Doc. 30, Defs.' Reply 2.)  The Court notes that both sides have submitted affidavits and other exhibits in support of their respective positions. When a party asks the Court to consider matters outside of the pleadings, determination as a motion to dismiss is improper.  Fed. R. Civ. P. 12(d); *see also Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).  Rule 12(d) also states that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the Motion."  Because Plaintiffs raised the issue that the Rule 12(b)(6) approach might be inappropriate in their Response, and because Defendants acknowledged the veracity of this statement in their Reply, the Court finds that the parties have had sufficient notice to provide all necessary materials with their briefs.  In addition, the Court finds that the documents submitted likely comprise most or all of what is available at this early stage of litigation without the benefit of discovery.  Therefore, the Court will convert the Motion to Dismiss to a Motion for Summary Judgment and will apply the standard of review set forth in Federal Rule of Civil Procedure 56.

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, judge the credibility of witnesses, or

determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on a motion for summary judgment, determine whether a jury could reasonably find by a preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their Complaint against all Defendants on August 3, 2009. (Court Doc. 1, Compl.) The Complaint alleges that Defendants Farmers Crop Insurance Alliance, Inc. ("Farmers") and Great American Insurance Company ("Great American"), acting through the Federal Crop Insurance Corporation ("FCIC") and the Risk Management Agency ("RMA"), sold and issued a crop insurance policy to Plaintiff Travis Wanamaker and to Plaintiffs Cain Field Nursery and Bonita Farm Nursery by and through their authorized agent for obtaining insurance, Plaintiff Travis Wanamaker. (*Id.* ¶ 10.) There is some debate, however, over the number of policies at issue, the identity of those policies, the areas insured by those policies, the dates those policies were effective, and the identity of the individual who actually signed the applications for or cancellations of insurance related to those policies. (Compare Court Doc. 18, Memo. in Supp. of Defs. Mot. to Dismiss, 1-3, and Court Doc. 18-1. Aff. of Kathleen Dawson ¶¶8-21 with Court Doc. 22, Pls.' Resp. to Defs.' Mot. to Dismiss, 2-5.)

At the outside, there are four potential policies at issue, though for each of these policies, at least some of the important dates (e.g. date of acceptance by the insurance company or issuance of the policy) are not only not verified in the record, but entirely

absent. These federally-reinsured Multiple Peril Crop Insurance ("MCPI") policies involved coverage for the 2004 and 2005 crop years, though the actual dates of application and cancellation are also not entirely clear from the record. The first is Policy 41-801-0002754 ("2754"), covering crops in Warren County for crop year 2004, applied for on April 20, 2004 by Travis Wanamaker, and issued at some point thereafter by Def. Farmers. (Dawson Aff. ¶¶9-10, Exs. A and B.) This policy was purportedly changed by Plaintiff Travis Wanamaker on September 1, 2004, when, for the crop year 2005, he added Grundy County to his coverage and cancelled Warren County. (Dawson Aff. ¶11, Ex. C.) The second potential policy at issue is a Great American policy, Policy No. 2005-TN-030-906811 ("6811"), though the person who applied for the policy and the area and crop it covered are not shown. (Pls.' Resp. to Defs.' Mot. to Dismiss, 3, and Dawson Aff. ¶¶18-19, Ex. J.) The only proof of its existence is the cancellation form signed by Travis Wanamaker on September 13, 2004, with a handwritten notation indicating it was actually cancelled on October 7, 2004. ( Dawson Aff., Ex. J.) The third potential policy at issue is Policy No. 41-801-0002779 ("2779"), covering crops in Warren County for crop year 2005, applied for on September 13, 2004, by Anthony Wanamaker (with Catrenia Wanamaker as spouse holding a 50% share). (Pls.' Respon. to Defs.' Mot. to Dismiss, 2, and Dawson Aff. ¶¶20, Ex. K.) The fourth potential policy at issue is Policy No. 41-801-0002808 ("2808") (Pls.' Respon. to Defs.' Mot. to Dismiss, 2-3.) Plaintiffs provided a letter from the USDA to Travis Wanamaker listing that policy – which covered the crop year 2005 -- as one relevant to him and discussing his appeal rights under that policy. (*Id.,* Ex. 1.) Defendants argue that the letter was sent to him in error, that that policy has *Timothy* Wanamaker as its named insured; and thus that any reference to Plaintiff Travis Wanamaker is a typographical error.

(Defs.' Reply, 7.)  Plaintiff Travis Wanamaker's application(s) included a Nursery Plant Inventory Value Report, and he provided Price Lists and Catalogs to the Farmers agent, shown on policy forms to be Richard Mackie with Summitville Crop Insurance Agency. (Court Doc. 18-4, Aff. of Counsel in Supp. of Defs.' Mot. to Dismiss, Ex. 1; Dawson Aff., Ex. A)

On or about April 29, 2005, the crops and inventory were damaged by a hail storm, and Plaintiffs filed an insurance claim.  (Compl. ¶ 11.)  On July 5, 2006, Farmers sent Travis Wanamaker a letter denying coverage under Policy 2754 for the 2005 crop year, based on "Not receiving a catalog for the 2005 year. Subsequently, the catalog sent in was not in the insureds name." (Dawson Aff., Ex. H.)  On August 14, 2006, Farmers sent Travis Wanamaker another letter, this one denying coverage under Policy 2754 for the 2005 crop year for Warren County specifically, with the denial of coverage based on the September 1, 2004 cancellation notice and the subsequent submission of a Plant Inventory Value Report for Grundy County alone (Dawson Aff., Ex. I.)    Attached to the first letter was "a Basic Provision indicating Section 20, which covers the Mediation, Appeal, etc. process." (Dawson Aff., Ex. H.)  Unfortunately, a copy of this enclosure was not provided to the Court, so it has no way of knowing which appeal rights were provided to Plaintiff Travis Wanamaker.  Attached to the second letter was "your rights to appeal this decision," in fact, an excerpt from the 2005 MPCI Basic Provisions, paragraph 20(a)-(d) "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review."  (Dawson Aff., Ex. I.)

Plaintiffs allege that Defendants improperly failed to pay the insurance claim and are liable for damages.  (Compl. ¶¶ 13-15.)  Plaintiffs further assert that after the claim was

denied, the parties submitted to arbitration, pursuant to the insurance policy terms, and Plaintiffs may now bring this action for judicial determination of the validity of their damages claim. (*Id.* ¶¶ 17-20.)

Defendants Farmers and Great American both submitted Answers to Plaintiffs' Complaint with Counterclaims on September 15, 2009, and filed the instant Motion to Dismiss on the same day. (Court Docs. 13, 14, & 17.) In their Motion, Defendants assert the following grounds for dismissal. First, Defendant Farmers asserts that Plaintiffs are barred from retrying their damages claim to this Court because the arbitration was the binding and final decision, and, in Tennessee, collateral estoppel applies to arbitration findings and the arbitration is considered a judgment on the merits. (Defs.' Memo. in Supp. of Mot. to Dismiss, 3.) In the alternative, Defendant Farmers claims that the statute of limitations bars any action on Plaintiffs' claim for damages. (*Id.*, 3-4.)

Defendant Great American moves for dismissal of the claims against it because it claims that it is not a party to the insurance contracts between Plaintiffs and Farmers. (*Id.*, 4.) Instead, Great American asserts that Farmers is its subsidiary, but the two are separate corporate entities with different states of incorporation, and Great American never had a contract with Plaintiffs. (*Id.*)

Finally, both Defendants move to dismiss claims made by Plaintiffs Cain Field Nursery and Bonita Farm Nursery because they contend that these are trade names, rather than legal entities which entered into the contracts associated with the issuance of the insurance policy. (*Id.*)

### III.    ANALYSIS

Because Great American argues that all claims against it should be dismissed because it is not a party to this action, the Court will consider this claim first.  The Court will next consider the argument as to the claims by Plaintiffs Cain Field Nursery and Bonita Farm Nursery.  Finally, the Court will consider the two grounds for dismissal asserted by Defendant Farmers.

### A.    Claims Against Great American Insurance Company

Defendant Great American asserts that it is a separate entity from Defendant Farmers and had no contract with Plaintiffs for the insurance policy in question.  (Memo. in Supp. of Defs.' Mot. to Dismiss, 17-18.)  In the current corporate structure, Farmers is a subsidiary of Great American, which is, in turn, a subsidiary of American Financial Group, Inc.  (Court Docs. 15 & 16.)  According to Great American, Farmers did not become its subsidiary until sometime after September 1, 2005, and it is not a successor in interest to any insurance policies issued by Farmers that existed at that time.  (Memo. in Supp. of Defs.' Mot. to Dismiss, 17-18.)  Farmers contends that based on the provisions and definitions of the insurance policy, Great American was not a party to the contract and cannot be subject to legal action.  (*Id.*)

Plaintiffs point out that at least one of the disputed policies, Policy 6811, was issued by Great American, and the only evidence it was not in effect at the time of the incident, the cancellation form, was not signed by Plaintiff Travis Wanamaker on the page providing for cancellation. (Pls.' Respon. to Defs.' Mot. to Dismiss, 10-11.)  The evidence surrounding its issuance and subsequent alleged cancellation are murky at best, but that

it was a Great American policy has not been disputed.  Further, Ms. Roxana Brixon wrote two letters to Plaintiff Travis Wanamaker almost a year after Farmers was bought by Great American, and her role in handling the claims is unclear. (Dawson Aff., Ex. I & J.)

The Court finds that the precise involvement of Defendant Great American in the underlying transaction is unknown at this time.  Although Defendants claim that Great American was not the insurer of any of the policies in question, it appears that Great American was the insurer of at least one of the policies at issue, and its role, through Ms. Brixon, in the finding that Plaintiff's policy was invalid and in the corresponding denial of Plaintiffs' insurance claim is also unclear.  Because the parties have not engaged in discovery at this stage of the litigation, it is impossible for the Court to determine as a matter of law whether Great American is an appropriate party to this lawsuit.  Based on the documents before the Court at this time, the Court finds that Great American's involvement is unknown and that a genuine issue of material fact exists as to whether the claims against it should be dismissed.  Accordingly, Defendants' Motion to Dismiss all claims against Defendant Great American will be **DENIED**.

### B.    Claims by Cain Field Nursery and Bonita Farm Nursery

Defendants assert that Plaintiffs Cain Field Nursery and Bonita Farm Nursery lack standing because they do not appear to be legal entities and no insurance policies were issued to these Plaintiffs.  (Memo. in Supp. of Defs.' Mot. to Dismiss, 18-19.)  Instead, Defendants claim that Cain Field Nursery and Bonita Farm Nursery merely appear to be trade names used by Plaintiffs Travis, Anthony, and Catrenia Wanamaker.  (*Id., 19*)

In their Complaint, Plaintiffs asserted that the insurance policy was issued:

to and for the benefit of Plaintiff Travis Wanamaker and to and for the benefit of Plaintiff Cain Field Nursery and Plaintiff Bonita Farm Nursery, by and through their authorized agent for obtaining such insurance, Plaintiff Travis Wanamaker, which such policy was sold and obtained for the benefit of Plaintiff Cain Field Nursery and Plaintiff Bonita Farm Nursery and their owner for the 2005 crop year, which such policy provided insurance coverage for the crops, products and farm and nursery materials and inventory of Plaintiff Cain Field Nursery located upon the property operated as Cain Field Nursery in Grundy County, Tennessee and operated as Bonita Farm Nursery in Warren County, Tennessee.

(Compl. ¶ 10.) Plaintiffs contend in their Response to Defendants' Motion that Cain Field Nursery and Bonita Farm Nursery are proper parties because policy documents, including the Nursery Plant Inventory Value Reports for Crop Year 2005, show that the inventory being insured was from Cain Field Nursery and Bonita Farm Nursery. (Pls.' Respon. to Defs.' Mot. to Dismiss, 20 and Exs. 8 & 9 (listing "Cainfields" in the "Remarks" section of one of the Nursery Plant Inventory Value Reports and "Anthony Bonita Farm Warren Grundy Skymont" in the other.)   They further argue that MPCI provisions provide that coverage can extend to "a partnership or joint venture," such as their farm or nursery, even if it "is not formally organized as an LLC or corporation." (*Id.*, 20.)

The Court has reviewed the documents before it and cannot determine whether the insurance policies at issue have any application to either Cain Field Nursery or Bonita Farm Nursery.  The Court notes, however, that this case is at a very early stage of litigation without the benefit of much discovery, and the Court does not have sufficient information at this time concerning the relationships between the various Plaintiffs, agency or otherwise.  The Court finds that additional discovery, the exchange of information and documents, and the clarification of relationships might substantiate claims by Plaintiffs Cain

Field Nursery and Bonita Farm Nursery, and it would be premature to dismiss these entities at this time. The Court concludes that genuine issues of material fact exist as to the validity of claims by these parties and that Defendants' Motion to Dismiss Cain Field Nursery and Bonita Farm Nursery as a party to this lawsuit should be **DENIED**.

### C.   Farmers Crop Insurance Alliance, Inc. Arguments

Defendant Farmers asserts two arguments, both of which attack Plaintiffs' basic ability to bring this lawsuit. Because these arguments are essentially intertwined, the Court will address them together.

Defendant Farmers first asserts that the arbitration conducted in this matter prohibits Plaintiffs from re-litigating the issues before this Court. (Memo. in Supp. of Defs.' Mot. to Dismiss, 3-4.) More specifically, Farmers contends that the Federal Arbitration Act ("FAA") limits the standard of review for arbitration awards, and claims cannot be retried anew in this Court unless Plaintiffs have a basis for requesting vacation or modification of the arbitration award. (*Id.* at 10-13.) Essentially, Farmers argues that collateral estoppel bars Plaintiffs from challenging the arbitration award and adjudicating the same claims a second time. (*Id.*) Plaintiffs claim that the insurance policy provisions and the same statutory provisions cited by Defendants not only allow for the filing of this litigation after the arbitration, but require it if Plaintiffs disagree with the findings. (Pls.' Respon. to Defs.' Mot. to Dismiss, 13-15.) Plaintiffs point to Paragraph 20(b)(3) and Paragraph 20(c) of the insurance policy and 7 U.S.C. 1508(j)(2) as permitting judicial action if arbitration is complete and making the arbitration decision binding only when judicial review is not sought. (*Id.*) Plaintiffs contend that the insurance policy terms control, and because the

provisions are controlling, judicial review of the arbitration decision is permitted. (*Id.*)

The determinations the Court must make in order to resolve this issue are twofold. First, the Court must determine whether collateral estoppel bars the instant case due to the prior disposition of these issues in arbitration. If the Court finds that collateral estoppel does not apply and that the binding determinations in the arbitration award do not prohibit this action, the Court must then determine whether the insurance policy provisions, including those relating to a statute of limitations, allow for judicial review by this Court.

The Court will address collateral estoppel and the arbitrations first. The arbitrations are both styled Travis Wanamaker v. Farmers Crop Insurance Alliance and Great American Insurance Company, with different Matter Numbers (Matter No. 30 430 01080 06 and Matter No. 30 430 01081 06). (Aff. of Counsel in Supp. of Defs.' Mot. to Dismiss, Exs. 2-3.) The Awards both state, in relevant part:

> In this dispute over nursery crop insurance, the policy limits the role of the arbitrators to resolving "any factual determination" made by the insurer. Though the insurer's initial basis for denying coverage related to the catalog submitted with the insurance application, the insurer has learned as a result of the arbitration additional grounds for denying coverage. One is that the Claimant did not have an insurable interest in the nursery crop that was damaged by a storm in April 2005.
>
> . . .
>
> The Claimant has not established that he had an insurable share or interest in the crop that was damaged. His parents lease from a third party the land upon which the crop is grown. His parents buy all of the stock that is planted. They take the orders and make the sales. The parents ship the orders. The parents receive the payments from the sales. The parents pay all the expenses. The Claimant's parents pay him an hourly wage. His parents report expenses for the Claimant's operation on their income tax return. The catalog the Claimant submitted with the application was his parents' catalog with only the front

cover changed. The parents paid the fee for the insurance. When the Claimant received an insurance payment for loss in a previous year, he paid it all to his parents. The parents even submitted the claim for this loss.

Because the Claimant has not established an insurable share in the crop, the policy is voided. Having made this factual determination, it is not necessary to make any additional factual determinations.

(*Id.* 1-2, 4.) Defendants assert that this award bars Plaintiffs from relitigating the same facts because collateral estoppel applies to make arbitration awards binding.

Because subject matter jurisdiction as to these two Defendants is based on diversity of citizenship, Tennessee law applies. "Under Tennessee law . . . the doctrine of 'collateral estoppel' operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit." *Smith v. Dawson-Smith*, 111 F. App'x 360, 362 (6th Cir. 2004) (citing *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995)). The purpose of collateral estoppel is "to conserve judicial resources, to relieve litigants from the cost and vexation of multiple lawsuits, and to encourage reliance on judicial decisions by preventing inconsistent decisions." *Beaty v. McGraw*, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998).

The Court must consider four factors when determining whether collateral estoppel applies to this case: (1) whether the issues in the prior proceeding were the same as those raised in the present action; (2) whether the prior proceeding resulted in judgment on the merits; (3) whether the party in the present action was a party or in privity with a party to the prior action; and (4) whether there was full and fair opportunity to litigate the issue in the prior proceeding. *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563 (Tenn. Ct. App. 1991). In Tennessee, findings made by an arbitrator have the same binding effect as

judicial determinations made by a court. *Turpin v. Love*, 1973 WL 16997, at *4 (Tenn. Ct. App. Aug. 14, 1973); *see also Bright v. Spaghetti Warehouse, Inc.*, 1998 WL 205757 (Tenn. Ct. App. Apr. 29, 1998) (applying collateral estoppel when underlying action was resolved at arbitration).

The issues raised through arbitration were basically the same as the issues raised in this action. Plaintiff Travis Wanamaker submitted several Demands for Arbitration, though it is not clear from any of them to which properties the specific arbitration demands apply. In them, though, Plaintiff Travis Wanamaker wrote of the same basic concerns outlined in his Complaint and Response to the Motion to Dismiss: that he submitted his catalogs to his agent, and then the agent submitted fraudulent generic ones to the insurer; that the agent cancelled his coverage for Warren County; and that the cancellation for Warren County containing his alleged signature was signed fraudulently by someone other than himself. (Aff. of Counsel in Supp. of Defs.' Mot. to Dismiss, Ex. 1.) This statement essentially comprises the same issues raised in the instant case, and the arbitration award can be considered a judgment on the merits.

The reason that the doctrine of collateral estoppel fails to bar this action, however, lies in the last two factors. The arbitration involved only individual Plaintiff Travis Wanamaker, while this action also involves the Anthony and Catrenia Wanamaker and the corporate bodies Cain Field Nursery and Bonita Farm Nursery, entities of unknown origin and status.[1] The Court recognizes that the crops at issue in the disputed policies may

---

[1] As noted above, there is some confusion over the various policies. Defendants assert that any claims under this policy are invalid as it was never submitted to arbitration and it is well past the statute of limitations. (Defs.' Reply, 5-8.) Although the Court recognizes a dispute over whether the 2004 or 2005 policy provisions apply, to be discussed *infra*, the Court notes that Plaintiff Travis Wanamaker's Demands for Arbitration refer only to the

have been crops at or held by Plaintiffs Cain Field Nursery or Bonita Farm Nursery, and that these entities may have had an interest in the outcome of the arbitration which only concerned Plaintiff Travis Wanamaker. In addition, although there would likely be privity flowing from the corporation to the individual agent if the corporation was bound by the arbitration award, the Court is not certain if privity between Plaintiff Timothy Wanamaker and Plaintiffs Cain Field Nursery or Bonita Farm Nursery would be present under the circumstances of this case, where only Plaintiff Timothy Wanamaker was involved in the arbitration. For that matter, the Court is not clear as to whether any agency relationship even exists between Timothy Wanamaker and Cain Field Nursery or Bonita Farm Nursery. The difference in parties and the potential implications of that difference make this factor weigh heavily against the application of collateral estoppel to the instant case.

Moreover, the Court cannot simply accept that the arbitration was a full and fair opportunity to litigate the issues. The Court lacks information about what documents or materials were provided to the arbitrator, but it appears that the arbitrator reviewed a limited universe of information to make the ultimate determination. From the meager

---

2754 policy. Submitting a denied claim to arbitration would be a required step under either year of the policy provisions. Though the Court agrees with Defendants that any action based on policies neither denied nor submitted is well beyond the statute of limitations, the very nature of Plaintiffs' claims of agent or insurer misconduct in cancelling without his consent, in fraudulently signing cancellation forms, and in submitting fabricated nursery inventory and catalog materials implies that the policy numbers may not be the controlling issue here. If Plaintiff believed, at the time of the submission of the claims to arbitration, that he had coverage for both properties under one policy and that the subsequent cancellations and transfers were all part of the same fraudulent scheme, it would make sense to refer only to that policy number he believed to be valid. Again, the state of the various policies is so confused at this point, it is impossible to rule that any one policy is invalid because it was not submitted to arbitration. Further, the Court notes that the actual arbitration awards not only make no reference to a particular policy number, they do not even refer to a particular insured property. Thus, it is impossible to determine which insurance policies the arbitrators were considering and pursuant to which the arbitrators were issuing the awards.

information available to the Court at this time, the arbitrator may have assessed evidence only to determine Plaintiff Travis Wanamaker's insurable share in the crops. Although other issues were raised—such as the voiding of the policy for invalid nursery catalogs—the arbitrator did not reach these issues and only made one factual determination. In fact, the arbitrator specifically noted that "it was not necessary to make any additional factual determinations" on the other issues presented. (*Id.*, Ex. 2-3.) This factor also weighs heavily against the application of collateral estoppel.

Based on the limited information available to the Court, the Court cannot accept that collateral estoppel applies to bar Plaintiffs' entire action. The Court recognizes, however, that this determination does not necessarily render the arbitration award moot and non-binding. Rather, the factual findings by the arbitrator may indeed still be binding on the parties to the arbitration, Plaintiff Travis Wanamaker and Defendants Farmers and Great American. It is only the arbitrator's specific findings that would be binding on this Court; therefore, the only determination that might be binding would be the finding that the insurance policy is invalid because Plaintiff Travis Wanamaker had no insurable interest in the crops.[2] Based on the Court's analysis of Defendants' argument regarding which

---

[2] The Court would note that there may be reasonable grounds for Plaintiffs to move for vacation of the arbitration award, although Plaintiffs to date have not made such an application. The FAA states that arbitration awards can be vacated for the following reasons:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

version of the insurance policy applies, however, the Court cannot even make the determination that the arbitration would be binding under the circumstances of this case.[3]

Nonetheless, even if the arbitration award is binding in its one narrow determination, the Court finds that there are many unanswered questions and issues that still exist as to which insurance policy is applicable, whether there was any fraud in the application, the relationship between the parties, and what level of coverage each believed they had and each actually had in relation to the crops that were lost in the storm. The Court has no

---

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). After reviewing the meager evidence available at this time, the Court finds that the arbitrator or arbitrators in this case may have exceeded their powers, which could render the award subject to vacation under 9 U.S.C. § 10(a)(4).

It appears to the Court that the arbitrators failed to address the issues presented and instead decided the award solely based on another theory–advanced by Defendants–which appears to have been advanced only after the arbitration was initiated. Defendants' argument was outside the scope of the issues presented for review by the arbitrator because, as the arbitrator noted, it was not raised until after the commencement of the arbitration process. The Court has no information about the opportunity that Plaintiffs had to gather and present evidence concerning this newly raised argument. Moreover, the arbitrator made the decision based solely on this newly advanced argument without reaching any of the issues and arguments actually submitted to the arbitration panel by Plaintiff Travis Wanamaker. The Court would also note that this deference to Defendants' subsequently raised argument may suggest grounds for vacation based on the refusal of the arbitrators to hear pertinent and material evidence or may indicate other misbehavior that prejudiced Plaintiffs. *See* 9 U.S.C. § 10(a)(3).

The Court does not have an application for vacation before it and does not have sufficient information to make any determination, at this time, that the arbitration award can indeed be vacated. The Court merely notes, without deciding, that vacation on these grounds is a theoretical possibility.

[3] The Court addresses this argument *infra*, but the 2005 Policy specifically provides that arbitration is binding "*unless* judicial review is sought" and that "you and we have the right to judicial review of any decision rendered in arbitration." (2005 Policy at ¶24.) (emphasis added). Therefore, if the 2005 Policy applied, the commencement of judicial review would appear to render the arbitration award non-binding, and the Court's review would be *de novo*.

information before it on the requirements to substantiate a crop insurance application, the procedure upon submission of the application materials, or the procedure for reviewing the submission for validity.  Because a large amount of the evidence submitted to the Court consists of seemingly random excerpts from different unsigned policy forms, because many of Defendants' citations to particular C.F.R. provisions are not identified by the relevant date of the C.F.R. section to which they cite and which they contend is applicable, and because many of the citations and quotations are either are not found (as quoted) in the C.F.R. or are a mixture between actual C.F.R. provisions and policy paragraph citations, it is difficult to ascertain which actual provisions were deemed to govern and which actually governed Plaintiffs' claims, especially since no complete, signed insurance policy was ever submitted to the Court.  Further, to the extent that Plaintiff Travis Wanamaker argues that certain signatures on the different forms are not his, the Court does note that the policy change forms submitted by Defendants do seem to have, for the same individual, signatures that appear very different. (Compare Dawson Aff., Exs. A & C.)

The Court notes that Plaintiffs have asserted a bad faith claim pursuant to Tennessee law, and the Court finds that there are many unresolved issues that might substantiate this claim, or a claim of estoppel based on reliance on what appeared to Plaintiffs to be a valid policy or policies–regardless of Defendants' contentions that the policy was invalid or the binding determination by the arbitrator that the policy was invalid due to Plaintiff Travis Wanamaker's insurable interest in the crops.  Under the circumstances, the Court finds that collateral estoppel would not bar Plaintiffs' action in this Court.  Furthermore, the Court finds that, in the event that the one factual determination in the arbitration award is binding, there are determinations that this Court could make on

several other issues not addressed or resolved during arbitration.

The Court must now assess whether Plaintiffs had the right to bring the instant lawsuit under the statute of limitations contained in the applicable policy provisions. Again, the Court notes the irony that Defendants assert the statute of limitations in the policy provisions as a defense after informing Plaintiffs that the policy was always invalid. Nonetheless, as the Court stated above, if Plaintiffs are correct that the policy was valid, the policy provisions would certainly apply.[4]

The determination of this issue depends in part on what version of the insurance policy controls. Defendants take the position that the forms marked 2004-NCIS 700B ("2004 Policy") apply to this case.[5] Plaintiffs contend that the forms marked 2005-NCIS 700B ("2005 Policy") control and have provided this document as an exhibit. (Pls.' Respon. to Defs.' Mot. to Dismiss, 8 & Ex. 6.) There is a significant difference in the language of

---

[4]  Of course, if the policy was valid, the Court would probably not have to address these issues in any event because, presumably, if the policy were valid, Defendants would not have denied Plaintiff's claim, and there would be no need to contest the failure to provide coverage.

[5]  Defendants originally submitted as "the policy terms for that year" their representative Form 2001-NCIS-700B. (Dawson Aff., Ex. D.) After Plaintiffs pointed out that a 2001 policy would have no relation to this controversy, Defendants submitted a Supplemental Affidavit, correcting what they described as a "typographical error" relating to the policy, i.e. labeling it "Form 2001" when it should be "Form 2004," in Ms. Dawson's affidavit and in the labeling of the exhibit itself. (Court Doc. 45, Supp. Aff. of Kathleen Dawson in Supp. of Defs.' Mot. to Dismiss, ¶3.) In that same sentence, however, Ms. Dawson refers to "the policy terms for the 2005 crop year applicable to Policy No. 2808." (*Id.*) Policy No. 2808 is the very policy Defendants argue has no relation to the claims of Travis Wanamaker as it named Timothy Wanamaker as the insured. (Defs. Reply, 5.) It is unclear if Ms. Dawson was arguing that she was amending her affidavit only as to Policy No. 2808, in which case the 2001 argument of Plaintiffs' is still at issue, or if this was yet another typographical error, with Ms. Dawson meaning Policy No. 2754 or 2779. Later in the Supplemental Dawson Affidavit she says [t]he applicable terms of coverage for the 2005 crop year included the 2004 MPCI Basic Provisions, as well as the other policy terms that I identified in my September 14, 2009 affidavit, but they did not include the 2005 MPCI Basic Provisions," so perhaps Ms. Dawson and the Defendants generally are arguing that this basic form applies to *all* the policies in question. (Supp. Dawson Aff., ¶6.) As with so much in this case, the record is conflicting and perhaps contradictory.

paragraph 20 of each policy, which contains information about appeals. In the 2004 Policy,

paragraph 20 is titled "Arbitration, Appeals, and Administrative Review" and reads as

follows:

> (a) If you and we fail to agree on any factual determination made by us, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Disputes regarding the amount of assigned production for uninsured causes for your failure to use good farming practices must be resolved under this subsection.
>
> (b) Except as provided in section 20(d), you may appeal any determination made by FCIC in accordance with appeal provisions published at 7 CFR part 400, subpart J or 7 CFR part 11.
>
> (c) No award determined by arbitration, appeal, administrative review or reconsideration process can exceed the amount of liability established or which should have been established under the policy.
>
> (d) If you do not agree with any determination made by us or FCIC regarding whether you have used a good farming practice, you may request reconsideration of this determination in accordance with the review process established for this purpose and published at 7 CFR part 400, subpart J. However, you must complete the reconsideration process before filing suit against FCIC in the United States district court. You cannot sue us for determinations of good farming practices.

(Dawson Aff., Ex. D) Also at issue in the 2004 Policy provisions is paragraph 25, which

is titled "Legal Action Against Us" and reads:

> (a) You may not bring legal action against us unless you have complied with all of the policy provisions.
>
> (b) If you do take legal action against us, you must do so within 12 months of the date of denial of the claim. Suit must be brought in accordance with the provisions of 7 U.S.C. 1508(j).
>
> (c) Your right to recover damages (compensatory, punitive, or

other), attorney's fees, or other charges is limited or excluded
by this contract or by Federal Regulations.

(*Id.*, ¶25.)

In contrast, paragraph 20 of the 2005 Policy is titled "Mediation, Arbitration,

Reconsideration, and Administrative and Judicial Review" and includes a great deal more

information.[6] (2005 Policy at ¶20.)    Essentially, the difference is this: with the

---

[6]    For the sake of conservation of paper, the Court will reproduce the many relevant portions
of this lengthy section in this footnote:

(a) If you and we fail to agree on any determination made by us except those specified in
section 20(d), the disagreement may be resolved through mediation in accordance with
section 20(g). If resolution cannot be reached through mediation, or you and we do not
agree to mediation, the disagreement must be resolved through arbitration in accordance
with the rules of the American Arbitration Association (AAA), except as provided in
sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any
mediator or arbitrator with a familial, financial or other business relationship to you or us,
or our agent or loss adjuster, is disqualified from hearing the dispute.

(1) All disputes involving determinations made by us, except those specified in
section 20(d), are subject to mediation or arbitration. However, if the dispute in
any way involves a policy or procedure interpretation, regarding whether a
specific policy provision or procedure is applicable to the situation, how it is
applicable, or the meaning of any policy provision or procedure, either you or we
must obtain an interpretation from FCIC in accordance with 7 CFR part 400,
subpart X or such other procedures as established by FCIC.

(I) Any interpretation by FCIC will be binding inany mediation or
arbitration.

(ii) Failure to obtain any required interpretation from FCIC will result in the
nullification of any agreement or award.

(iii) An interpretation by FCIC of a policy provision is considered a rule of
general applicability and is not appealable. If you disagree with an
interpretation of a policy provision by FCIC, you must obtain a Director's
review from the National Appeals Division in accordance with 7 CFR 11.6
before obtaining judicial review in accordance with subsection (e).
(iv) An interpretation by FCIC of a procedure may be appealed to the
National Appeals Division in accordance with 7 CFR part 11.

(2) Unless the dispute is resolved through mediation, the arbitrator must provide
to you and us a written statement describing the issues in dispute, the factual
findings, the determinations and the amount and basis for any award and
breakdown by claim for any award. The statement must also include any amounts
awarded for interest. Failure of the arbitrator to provide such written statement will
result in the nullification of all determinations of the arbitrator. All agreements

reached through settlement, including those resulting from mediation, must be in writing and contain at a minimum a statement of the issues in dispute and the amount of the settlement.

(b) Regardless of whether mediation is elected:

(1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

(2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;

(3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered; and

(4) In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

(c) Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration.

(d) If you do not agree with any determination made by us or FCIC regarding whether you have used a good farming practice (excluding determinations by us of the amount of assigned production for uninsured causes for your failure to use good farming practices), you may request reconsideration by FCIC of this determination in accordance with the reconsideration process established for this purpose and published at 7 CFR part 400, subpart J (reconsideration). To resolve disputes regarding determinations of the amount of assigned production, you must use the arbitration or mediation process contained in this section.

(1) You must complete reconsideration before filing suit against FCIC and any such suit must be brought in the United States district court for the district in which the insured farm is located.

(2) Suit must be filed not later than one year after the date of the decision rendered in the reconsideration.

(3) You cannot sue us for determinations of whether good farming practices were used by you.

(e) Except as provided in section 20(d), if you disagree with any other determination made by FCIC, you may obtain an administrative review in accordance with 7 CFR part 400, subpart J (administrative review) or appeal in accordance with 7 CFR part 11 (appeal). If

2004 Policy, claimants appealing unfavorable decisions must file suit in district court within a year of the claim denial;[7] with the 2005 Policy, claimants generally have a year after the appeal procedures–mediation, arbitration, reconsideration, etc.–are complete, which would occur well after the claim denial. Moreover, in the 2005 Policy, Paragraph 20(c) specifically states that arbitration is binding "*unless* judicial review is sought" and that "you and we have the right to judicial review of any decision rendered in arbitration." (2005 Policy at 24.) (emphasis added). This language has the potential to significantly undercut Defendants' arguments regarding the binding effect of the arbitration award in this case.

Defendants claim that the 2004 Policy applies to the instant case because the RMA declared that the 2004 version of the MPCI Basic Provisions would apply to nursery crops and determined that the "contract change date" for application of the 2005 Basic Provisions would be August 30, 2004. (Defs.' Reply, 3-4.) Defendants state that the contract change date for nursery policies in crop year 2005 was June 30, 2004. (*Id.*) Because this date

---

you elect to bring suit after completion of any appeal, such suit must be filed against FCIC not later than one year after the date of the decision rendered in such appeal. Under no circumstances can you recover any attorney fees or other expenses, or any punitive, compensatory or any other damages from FCIC.

(f) In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding. Conflicts between this policy and any state or local laws will be resolved in accordance with section 31. If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control. . . .

[7]     Even this point is debatable. Defendants argue that the statute of limitations embodied in the 2004 MPCI basic provisions, ¶25(b), requires suit within a year of the date of denial of the claim. (Memo. in Supp. of Defs.' Mot. to Dismiss, 15-16.) Plaintiffs, however, point out that the very RMA determinations cited by Defendants militate against this reading: "even Farmers and Great American acknowledge that 'legal action' is a broader term than 'filing suit' and that taking legal action is satisfied by filing either 'suit and/or arbitration.' (Pls.' Respon. to Defs.' Mot. to Dismiss, 17. *See also* Aff. of Counsel, Ex. 3, USDA RMA's Final Agency Determination FAD-013, which provides that "legal action encompasses both litigation and arbitration.")

was prior to August 30, 2004, and the 2005 Basic Provisions would only apply to policies with dates after August 30, 2004, the 2004 Policy applies.  (*Id.* at 3-4.)  Defendants assert that:

> The sales closing date for nursery policies in crop year 2005 was May 31, 2005, so the immediately-preceding contract change date for crop year 2005 was June 30 of the prior year (2004).   Since the contract change date for 2005 nursery policies (June 30, 2004) preceded the effective date of the 2005 MPCI Basic Provisions (August 30, 2004), the 2004 version of the terms still applied to nursery policies such as Plaintiff Travis Wanamaker's.

(*Id.* at 4.)

Frankly, the Court does not understand the precise relationship between all of these dates, and the Court is not sure that Defendants did either, particularly when they communicated with Plaintiffs regarding the policy.  Further, the Court is not certain this analysis is applicable to Plaintiffs Travis, Anthony, and Catrenia Wanamaker when all the changes to their policies, either with or without their consent and signature, occurred in September of 2004, well after the contract change and effective date. (Dawson Aff., Ex. C, change form for Policy 2754 showing date of September 1, 2004; Dawson Aff., Ex. J, cancellation form for Policy 6811 showing cancellation application date of September 13, 2004, and an effective date of October 2004; Dawson Aff., Ex. K application form for Policy 2799 showing application date of September 13, 2004.)   Nonetheless, Defendants assert that because the 2004 Policy applies, the statute of limitations has passed for judicial review because the denial of Plaintiffs' claim (or rather, the invalidation of Plaintiffs' policy) occurred on July 5, 2006, and August 14, 2006, and Plaintiff did not file suit until August 3, 2009.  Plaintiffs assert that the correct statute of limitations is outlined in the 2005 Policy provisions and that suit was properly filed within one year after the Arbitration Award was

made "no earlier than August 8, 2008." (Pls.' Respon. to Defs.' Mot. to Dismiss, 16-17.) As Plaintiffs point out, the Court has only been provided with copies of the arbitration awards that have one of the three arbitrators' signatures, so there is no indication when the awards were signed by all three arbitrators, making them final. (*Id.*)

The Court finds that the more relevant issue is whether Plaintiffs were aware of the policy provisions that applied and were aware of what Defendants now contend was the accurate statute of limitations. As it stands, the Court does not have any information as to what policy provisions were sent to Plaintiffs, if any, when the policy was issued. The information before the Court, however, does show that if Defendants are correct and the 2004 Policy applies, Plaintiffs were egregiously misinformed of the process for appealing the determination that the policy was invalid, and that Defendants–at least initially, and likely multiple times–incorrectly sent Plaintiffs the 2005 Policy documents to outline the appeal rights.

On July 5, 2006, Farmers sent Travis Wanamaker a letter denying coverage under Policy 2754 for the 2005 crop year, based on "Not receiving a catalog for the 2005 year. Subsequently, the catalog sent in was not in the insureds name." (Dawson Aff., Ex. H.) Attached to the first letter was "a Basic Provision indicating Section 20, which covers the Mediation, Appeal, etc. process," but, as stated above, a copy of this enclosure was not provided to the Court, so it has no way of knowing which appeal rights were provided to Plaintiff Travis Wanamaker. (Dawson Aff., Ex. H.) Travis Wanamaker received another letter from Farmers on August 14, 2006, this one denying coverage under Policy 2754 for the 2005 crop year for Warren County specifically, with the denial of coverage based on the September 1, 2004 cancellation notice and the subsequent submission of a Plant

Inventory Value Report for Grundy County alone (Dawson Aff., Ex. I.)    Attached to the

second letter was "your rights to appeal this decision," in fact, an excerpt from the 2005

MPCI Basic Provisions, paragraph 20(a)-(d) "Mediation, Arbitration, Appeal,

Reconsideration, and Administrative and Judicial Review."    (Dawson Aff., Ex. I.)

Finally, Plaintiff Travis Wanamaker also received a December 1, 2006, letter from

the USDA RMA stating:

> Your insurance provider was wrong in advising you that you
> had appeal rights to the [RMA] under your policy. I am sorry
> that your insurance provider gave you this wrong information
> and that you incurred inconvenience as a result. I understand
> that you now have a letter from your insurance provider in
> which your rights are properly cited regarding a policy dispute.

(Pls.' Respon. to Defs.' Mot. to Dismiss, 2-3 & Ex. 1.)  This letter is the one addressed to

Plaintiff Travis Wanamaker that refers to claims pursuant to Policy No. 2808.  Defendants

claim this is a typographical error, in that Timothy Wanamaker is the named insured on

Policy No. 2808. It is unclear from the record if this is the case, and thus if Plaintiff Travis

Wanamaker can rely on anything related to this policy in his claims.  At a minimum, this

letter shows the position of the USDA RMA to be that insureds should (and should be able

to) rely upon their insurance providers to provide them with the appropriate provisions

governing policy disputes.

Given this correspondence, the Court cannot accept that Plaintiffs had any accurate

idea of the statute of limitations that would apply to this case.   In fact, the only

correspondence provided to the Court in this case indicates that Plaintiff Travis

Wanamaker should have believed that the 2005 appeals process would govern his claim.

It may very well be that the 2004 MPCI Basic Provisions are actually those meant to apply

to the nursery insurance policy at issue, but in order for those terms to apply to *any* insurance policy when a claimant is attempting to perfect an appeal, the claimant needs to be informed of the appropriate provisions. Here, Plaintiffs seem to have been given incorrect information over a period of months which consistently referenced the 2005 Policy provisions. If that was in error and the 2004 Policy actually applied, that error is entirely attributable to Defendants Farmers and Great American.

Defendants also take the position that because the 2004 Policy provisions were jointly submitted to the arbitrator, this Court should view this submission as binding the parties to those provisions. The Court is not inclined to do so for the same reasons the Court has previously stated regarding its concerns as to the validity of the arbitration award to this lawsuit. In addition, the arbitrator made no comment or determination on the issue of what policy provisions applied, so the fact that the parties submitted the 2004 Policy documents to arbitration does not bind the Court to accept that these provisions apply.

Based on the information available to the Court at this time, Plaintiffs were likely completely misinformed of their appeal rights and may have never been provided with what Defendants now claim is the accurate statute of limitations. A plaintiff can hardly be expected to comply with one set of provisions when he was continuously told to comply with a different set of provisions in order to perfect his appeal. Accordingly, the Court rejects Defendants' arguments regarding the statute of limitations as it is outlined in the 2004 Policy. Because Plaintiffs were consistently told to comply with the appeal provisions in the 2005 Policy documents, the Court finds that Plaintiffs appropriately filed this suit for judicial review within one year of the arbitration award, as provided in the 2005 Policy.

The Court therefore rejects both of Defendant Farmers' arguments in regards to the

application of collateral estoppel based on the arbitration award and the statute of limitations contained in the 2004 Policy documents.

The Court would note once more that many of its determinations at this time are due to lack of information; simply put, the Court is at a loss to understand much of what transpired with these insurance policies, the determinations that they were invalid, and the arbitration. As a result, the Court finds that Defendants' Motion is premature at this juncture. At the summary judgment stage, the Court must consider the evidence in the light most favorable to the Plaintiffs, and the Court finds that Plaintiffs have raised several genuine issues of material fact that cannot be resolved at this early stage of litigation. The Court anticipates that some of these issues might be resolved with more extensive discovery; based on the dearth of information available at this time, however, the Court concludes that there is insufficient evidence warranting the dismissal of Plaintiffs' claims against Defendant Farmers based on the arbitration award and the statute of limitations. Accordingly, Defendants' Motion to Dismiss on these issues is **DENIED**.

## IV.    CONCLUSION

For the reasons outlined above, the Court **ORDERS** that the Motion to Dismiss [Court Doc. 17] submitted by Defendant Farmers Crop Insurance Alliance, Inc. and Defendant Great American Insurance Company is **DENIED** in its entirety.

**SO ORDERED** this 21st day of September, 2010.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE