UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

CAIN FIELD NURSERY, *et al.*,          )
                                       )
                    Plaintiffs,        )
                                       )          4:09-cv-78
v.                                     )          *Lee*
                                       )
FARMERS CROP INSURANCE                 )
ALLIANCE, INC., *et al.,*              )
                                       )
                    Defendants.        )

## MEMORANDUM AND ORDER

Before the Court are three motions for summary judgment: one filed by Defendants Farmers

Crop Insurance Alliance, Inc. ("Farmers Crop Insurance") and Great American Insurance Company

("Great American") (collectively "Defendants") [Doc. 82], one filed separately by Great American

[Doc. 86], and one filed by Plaintiffs Cain Field Nursery ("Cain Field"), Bonita Farm Nursery

("Bonita Farm"), and Travis Wanamaker ("Travis"), Anthony Wanamaker ("Anthony") and Catrenia

Wanamaker ("Catrenia"), all individually and doing business as Bonita Farm and Cain Field [Doc.

81]. For the reasons explained below, the Court will **GRANT** Defendants' motion for summary

judgment [Doc. 82], will **DENY** Plaintiffs' motion for summary judgment [Doc. 81], and will

**DENY AS MOOT** Great American's separate motion for summary judgment [Doc. 86].

## I.    BACKGROUND

### A.    Complaint Allegations and Procedural Posture

The Complaint alleges that Defendants issued a crop insurance policy to Travis for the

benefit of Cain Field and Bonita Farm for the 2005 crop year [Doc. 1 at PageID#: 7].[1] On or about

---

[1] Plaintiffs also filed suit against the Federal Crop Insurance Corporation ("FCIC"), the Risk
Management Agency ("RMA"), and the United States Department of Agriculture ("USDA")

April 29, 2005, a hail storm damaged the crops on these two farms, and Travis submitted insurance claims for the loss pursuant to his crop insurance policy, which provided coverage for such a loss [*id.*]. Defendants denied Travis's claims and the claims were then submitted to arbitration as required under the policy [*id.* at PageID#: 9-10]. An arbitration award, which upheld the denial of Travis's insurance claims, was issued on August 8, 2008 [*id.* at PageID#: 10].

In this matter, Plaintiffs allege that Defendants failed to properly pay the insurance claims and are liable for breach of contract and bad faith refusal to pay pursuant to Tennessee state law [*id.* at PageID#: 8-9]. Plaintiffs also assert Defendants acted with fraud and malice in denying the insurance claims because Defendants failed to comply with the terms of the insurance policy and the applicable procedures [*id.* at PageID#: 10].[2]

### B. Undisputed Facts

The Court held oral argument on all of the above-referenced motions for summary judgment on March 20, 2012. At the oral argument, the parties agreed that the facts relating to their respective summary judgment motions are not in dispute. A brief summary of the relevant undisputed facts follows.

Anthony and Catrenia Wanamaker are husband-and-wife owners of nursery farms and they also own and operate a nursery business named Dry Shave [Doc. 80 at PageID#: 560]. Anthony and

---

(collectively the "federal agencies"), but these federal agencies were dismissed by the Court [Doc. 47] prior to the parties' consent to the magistrate judge.

[2] Plaintiffs also filed a separate case, Civil Case No. 4:09-cv-98, asserting state law claims against the insurance agency and agents who worked with the Wanamaker family with respect to crop insurance and who assisted Travis in the relevant insurance application process. That case was recently remanded to state court due to the Court's lack of subject matter jurisdiction [4:09-cv-98, Doc. 36].

2

Catrenia sought to retire and wanted to turn their nursery enterprise over to their sons [*id.* at 560-61]. To that end, they transferred the crop at different farms where nursery crops owned by Dry Shave were planted to each of their two sons, Dusty and Travis [*id.* at 560-61]. Anthony and Catrenia transferred the crops at Cain Field and Bonita Farm to Travis, but there was no written or formalized agreement to gift the crops to Travis, he did not pay his parents for the crop, and none of the parties involved in the transfer filed a gift tax return [*id.* at PageID#: 561]. Nonetheless, the family considered Travis to be the owner of the crop at these farms and, starting with the 2005 crop year, Travis was in charge of the nursery crop at both Cain Field and Bonita Farm [*id.* at PageID#: 562]. Travis worked on the two farms, decided how many employees would be necessary, decided when to fertilize and when to apply chemicals, determined when inventory was ready for market, made marketing decisions about the nursery products, and generally oversaw all operations of the two farms [*id.*; Doc. 88 at PageID#: 1166].

As part of Travis's operation of Cain Field and Bonita Farm, he sought to secure crop insurance for both farms. The Wanamaker family worked with insurance agent Richard Mackie to obtain their crop insurance policies during the time period in question [Doc. 80 at PageID#: 563, 565-66; Doc. 88 at PageID#: 1166]. Originally, Travis insured the crop at the Grundy County, Tennessee farm (Cain Field) for the 2004 crop year with Great American policy No. 2004-TN-030-906811 [Doc. 80 at PageID#: 562]. This policy was later cancelled pursuant to a form submitted to Great American in September 2004 after an unknown individual (not Travis) signed the form seeking to cancel Travis's Grundy County insurance [*id.* at PageID#: 562-63].[3]

_____

[3] During oral argument, Plaintiffs acknowledged that if their claims against Farmers Crop Insurance were to be dismissed, there were no separate claims against Great American which would survive.

As for the Warren County, Tennessee farm (Bonita Farm), in May 2004, Farmers Crop Insurance received an application for crop insurance with what was purported to be Travis's signature, but was in fact not signed by Travis [*id.* at PageID#: 563-64]. In conjunction with this application, Farmers Crop Insurance also received a Plant Inventory Value Report ("PIVR") and a Crop Inventory Valuation Estimate for 2004 for the Warren County farm [*id.* at PageID#: 564]. Farmers Crop Insurance issued policy No. 41-801-0002754 ("Policy 2754") to Travis for crop year 2004 [*id.* at PageID#: 564-65]. In September 2004, Farmers Crop Insurance received a form seeking to cancel the Warren County coverage and to add Grundy County coverage; this form was also signed by an unknown person and not Travis [*id.* at PageID#: 565]. A PIVR and a Crop Inventory Valuation Estimate for 2005 were submitted in conjunction with the application and the PIVR, which reports a Practice Value of over two million and 1.5 million in prior year's sales, was not signed by Travis [*id.* at PageID#: 565-67]. After receiving the form, Farmers Crop Insurance added Grundy County coverage and cancelled Warren County coverage on Policy 2754 for crop year 2005 [*id.* at PageID#: 567; Docs. 89-9; 89-10]. As a result, for crop year 2005, Travis had a policy with Farmers Crop Insurance that covered only the crops at the Grundy County farm (Cain Field) and did not cover the crops at Bonita Farm in Warren County.

After a hail storm damaged the crop on both farms in April 2005, Travis submitted insurance claims to Farmers Crop Insurance. In July 2005, the RMA directed Farmers Crop Insurance to review several nursery crop insurance policies in Tennessee to determine whether the policies had acceptable catalogs [Doc. 88 at PageID#: 1168; Doc. 80 at PageID#: 591]. As a result of this review, Farmers Crop Insurance informed Travis by letter of July 5, 2006, that it was denying coverage under Policy 2754 because it did not receive a catalog for the 2005 crop year and it did not

receive an appropriate catalog in the insured's name [Doc. 80 at PageID#: 593-94; Doc. 89-14 at PageID#: 1236]. On August 14, 2006, Farmers Crop Insurance sent Travis another letter indicating that he had no coverage for the Warren County farm based on the aforementioned cancellation form submitted to Farmers Crop Insurance in 2004 with the unknown individual's signature [Doc. 80 at PageID#: 594-95; Doc. 89-15 at PageID#: 1238].[4]

After the denial of his claims, Travis submitted two demands for arbitration on December 20, 2006 and December 26, 2006 seeking coverage for the crop at both farms [Doc. 80 at PageID#: 596; Doc. 18-4 at PageID#: 142-49]. Travis was represented by an attorney throughout the arbitration proceeding, which included discovery and culminated in a three-day hearing before a panel of three arbitrators on June 18, 19, and 20, 2008 [Doc. 80 at PageID#: 597]. An arbitration award issued on August 5, 2008, upheld the voidance of Travis's policy on the ground that Travis did not establish he had an insurable interest [*id.* at PageID#: 597-98; Doc. 89-16 at PageID#: 1240]. Plaintiffs filed the instant case on August 3, 2009 [Doc. 1].

## II.    STANDARD OF REVIEW

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Anderson*,

---

[4] The communications from Farmers Crop Insurance regarding Travis's appeal rights were rather confusing: an August 14, 2006 letter attached documentation regarding appeal rights, but it was derived from the inapplicable 2005 policy provisions, and an August 28, 2006 letter regarded an alternate route for appeal [Doc. 18-2 at PageID#: 126-27, Doc. 85-13 at PageID#: 1139].

477 U.S. at 248.  A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party.  *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute.  *Id.* at 249.  Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907.  A mere scintilla of evidence is not enough to survive a motion for summary judgment.  *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. James*, No. 7:09-CV-98 (HL), 2011 WL 837179, at *1 (M.D. Ga. Feb. 2, 2011).  The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c).  If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute.  *Id.*  In reply, the movant may then attempt to show that the materials cited by the nonmovant "do not establish the . . . presence of a genuine dispute."  *Id.*  Either party may also attempt to challenge the admissibility of its opponent's evidence.  *Id.*

The court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion.  *Id.*  If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly

6

support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant

summary judgment if the motion and supporting materials . . . show that the movant is entitled to

it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).

## III.    ANALYSIS

### A.    Defendants' Motion

Defendants argue that collateral estoppel bars Plaintiffs from relitigating the claims heard

and decided during arbitration because the arbitration was a full and fair opportunity to litigate on

the merits, complete with discovery and a three-day hearing in accordance with the rules of the

American Arbitration Association, and Travis was a party to the arbitration [Doc. 83 at PageID#:

795-96].[5]  Defendants contend that although they did not raise the insurable interest issue when they

initially denied Travis's claims, Travis was alerted to this argument during the arbitration discovery

process and had an opportunity to fully litigate the merits of this issue, which was the determinative

issue in the arbitration decision [*id.* at PageID#: 797-98].

Plaintiffs argue that collateral estoppel should not apply because the arbitration was not, in

fact, a full and fair opportunity to litigate the merits of all the claims presented in the instant case

[Doc. 97 at PageID#: 1387].  Specifically, because the arbitration award concerns a factual

determination only as to the insurable interest issue and states that no other factual determinations

---

[5]  Defendants assert several other arguments, supported by affidavits and exhibits, in their
motion.  For example, Defendants invoke a confusing and sometimes contradictory interplay
between the language of the policy provisions, a provision of the Federal Crop Insurance Act, and
a Final Agency Determination issued by the RMA to assert that a statute of limitations bars
Plaintiffs' claims.  In addition, Defendants raise several arguments with respect to Travis's alleged
failure to comply with policy provisions and alleged deficiencies in his state law claims.  As the
Court finds Defendants are entitled to summary judgment on the grounds of collateral estoppel, it
is not necessary to address Defendants' remaining arguments.

are made as to other issues, Plaintiffs argue there are claims that were not fully evaluated in arbitration and thus cannot be barred by collateral estoppel [*id.* at 1387-90]. Plaintiffs also argue that the policy provisions, by contemplating legal action after arbitration, suggest that they are not barred from further litigation and that the arbitration award is not binding [*id.* at 1390].

### 1. The Policy

The parties have stipulated that the 2004 policy provisions are applicable and govern the parties' claims [Doc. 80 at PageID#: 554].[6] The 2004 provisions, which are largely devoid of terms concerning the effect of arbitration, state in relevant part as follows:

> 20. Arbitration, Appeals, and Administrative Review.
>
> (a) If you and we fail to agree on any factual determination made by us, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Disputes regarding the amount of assigned production for uninsured causes for your failure to use good farming practices must be resolved under this subsection.
>
> (b) Except as provided in section 20(d), you may appeal any determination made by FCIC in accordance with appeal provisions published at 7 CFR part 400, subpart J or 7 CFR part 11.
>
> (c) No award determined by arbitration, appeal, administrative review or reconsideration process can exceed the amount of liability established or which should have been established under the policy.
> . . .
>
> 25. Legal Action Against Us.
>
> (a) You may not bring legal action against us unless you

---

[6] During briefing on Defendants' motion to dismiss and prior to the above-referenced stipulation, Plaintiffs advanced the 2005 policy provisions as those applicable to the 2004 crop year, while Defendants maintained the 2004 policy provisions applied.

8

have complied with all of the policy provisions.

(b)  If you do take legal action against us, you must do so within 12 months of the date of denial of the claim.  Suit must be brought in accordance with the provisions of 7 U.S.C. § 1508(j).

(c)  Your right to recover damages (compensatory, punitive, or other), attorney's fees, or other charges is limited or excluded by this contract or by Federal Regulations.

[Doc. 18-2 at PageID#: 103-04].

## 2.      The Federal Arbitration Act

To address the parties' argument regarding collateral estoppel, and in the absence of further guidance about arbitration in the applicable policy provisions,[7] the Court will also look to the Federal Arbitration Act ("FAA"), which applies to arbitration awards in crop insurance cases.  *See Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1302 (M.D. Fla. 2010) (noting the FAA applies to contracts affecting interstate commerce and citing cases finding the FAA applies to crop insurance contracts), *Svancara v. Rain and Hail, LLC*, No. 8:09CV144, 2009 WL 2982906, at *3 (D. Neb. Sept. 11, 2009) ("I conclude that a crop insurance policy, reinsured by a federal agency, 'involves interstate commerce'"), *In re 2000 Sugar Beet Crop Ins. Litig.*, 228 F. Supp. 2d 992, 997 (D. Minn. 2002) ("[T]he FAA and other federal laws are applicable" to crop insurance policies), *Nobles v. Rural Cmty. Ins. Servs.*, 122 F. Supp. 2d 1290, 1299-1300 (M.D. Ala. 2000).

The FAA provides the parties may apply to the court for a confirmation of the award within one year of the award (9 U.S.C. § 9), the award may be vacated for various grounds (9 U.S.C. § 10),

---

[7]  The 2005 policy provisions include the following statement: "Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3).  Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration" [Doc. 25 at PageID#: 249 (¶ 20(c))].

and a court may modify or correct an arbitration award (9 U.S.C. § 11). Although the FAA itself does not explicitly address a court's standard of review when faced with a lawsuit addressing an arbitration award, the United States Court of Appeals for the Sixth Circuit has indicated that the FAA "'expresses a presumption that arbitration awards will be confirmed . . . . When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Uhi v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005)).

### 3.      The Arbitration

A preliminary hearing was held in the arbitration process on May 15, 2007, resulting in the issuance of a scheduling order to govern a period of time through September 4, 2007, for the parties to conduct discovery [Doc. 84-1 at PageID#: 817-18]. This original discovery deadline appears to have been changed later, as the parties engaged in written discovery in November and December 2007 [*id.* at PageID#: 826-44, 1064-86]. Farmers Crop Insurance submitted its pre-hearing brief on June 6, 2008, in which it made several arguments, including an argument that Travis had no insurable share in the crop [*id.* at PageID#: 845-64].

A three-day arbitration hearing commenced on June 18, 2008 to address the claims asserted by Travis as they relate to this case and to address the claims of Timothy Wanamaker as they relate to Civil Case No. 4:09-cv-79 [Doc. 95 at PageID#: 1299]. The parties have filed various portions of the transcript of the arbitration hearing, and the transcript spans some three volumes and several hundred pages [Doc. 80-1 at PageID#: 606-10, Doc. 84 at PageID#: 814]. Travis was represented

by counsel at the arbitration.[8]  After the arbitration hearing, Farmers Crop Insurance submitted a list of issues requiring factual determination to the arbitration panel, including the issue of whether Travis had a 100% share in the nursery crop at Cain Field or Bonita Farm [Doc. 84-1 at PageID#: 865-69].

The arbitration award signed on August 5, 2008,[9] states in relevant part:

> The Claimant has not established that he had an insurable share or interest in the crop that was damaged.  His parents lease from a third party the land upon which the crop is grown.  His parents buy all of the stock that is planted.  They take the orders and make the sales.  The parents ship the orders.  The parents receive the payments from the sales.  The parents pay all the expenses.  The Claimant's parents pay him an hourly wage.  His parents report expenses for the Claimant's operation on their income tax return.  The catalog the Claimant submitted with the application was his parents' catalog with only the front cover changed.  The parents paid the fee for the insurance.  When the Claimant received an insurance payment for loss in a previous year, he paid it all to his parents.  The parents even submitted the claim for this loss.

> Because the Claimant has not established an insurable share in the crop, the policy is voided.  Having made this factual determination, it is not necessary to make any additional factual determinations.

[Doc. 89-16 at PageID#: 1240-41].

---

[8]  The transcript states that Travis represented himself *pro se* and Attorney Aubrey Harper represented Timothy Wanamaker [Doc. 80-1 at PageID#: 607], but it appears undisputed that Attorney Harper was actually representing Travis during the hearing [Doc. 80 at PageID#: 596-97, Doc. 84 at PageID#: 814].  The parties clarified during oral argument on the pending motions that Attorney Harper represented Travis while Timothy was *pro se* during the arbitration proceedings.

[9]  There are actually two awards in the record, which are nearly identical except for a difference in the matter number (one is 30 430 01080 06 and one is 30 430 01081 06), the fees charged by the AAA, and the fees and expenses to be reimbursed to Travis.  One was signed on August 5, 2008 and the other appears to have been signed on August 8, 2008 [Doc. 89-16 at PageID#: 1240-44].  The two awards may be attributable to Travis's two claims for the two different farms and two different insurance policies.

## 4. Collateral Estoppel Factors

The Defendants primarily couch their argument regarding the effect of the arbitration in terms of collateral estoppel, as opposed to arguing for deference to the award pursuant to the FAA. Because the prior proceeding was an arbitration subject to the FAA, the Court will look to federal law for the applicable collateral estoppel factors.[10]  Generally, collateral estoppel "bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tenn. Dept. of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009).  There are four factors the party asserting collateral estoppel must establish: "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *United States v. Cinemark USA, Inc.*,

---

[10]  When subject matter jurisdiction is based on diversity of citizenship, as here, it is unclear whether state or federal collateral estoppel factors should apply to a case where the prior proceeding is an arbitration under the FAA.  If the prior proceeding had occurred in federal court, then it is generally recognized that federal collateral estoppel factors should apply even when the case is before the court based on diversity jurisdiction.  *See J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213-14 (6th Cir. 1996) (deciding "whether in a federal diversity action, federal or state law governs the preclusive effect of a prior federal diversity judgment" and determining that federal law, not state law, should apply); *In re Air Crash at Detroit Metro. Airport, Detroit, Mich. on August 16, 1987*, 776 F. Supp. 316, 319-24 (E.D. Mich. 1991) (discussing at length and concluding that federal collateral estoppel factors should apply when analyzing the effect of a federal court judgment).  It is also recognized that if the prior proceeding took place in state court and the federal court has diversity jurisdiction, then state law collateral estoppel factors generally apply.  *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 849-50 (6th Cir. 2006).  The parties did not address whether state or federal collateral estoppel factors should apply herein.

348 F.3d 569, 583 (6th Cir. 2003).[11]  The Court will address these factors in turn.

### a.    The same issues were decided and necessary to the outcome

The first two factors address the question of whether the issues raised and litigated in the prior proceeding were the same and if the issues decided were necessary to the outcome of the arbitration.  Plaintiffs argue that the issues in the arbitration were not the same as the issues raised herein because the arbitrators made only one factual determination and declined to address any other issues.  Plaintiffs argue that their ability to file suit allows for *de novo* review of all claims and issues raised rather than an appeal of the arbitrators' sole factual determination.

Contrary to Plaintiffs' argument, once the arbitrators decided a threshold issue that resulted in the voidance of the crop insurance policies, it was not necessary for the arbitrators to address all other issues raised in the arbitration proceedings.[12]  The issues raised here appear to be the same as the issues raised in the arbitration, and it is within this context that the Court must address the collateral estoppel argument to determine if Plaintiffs are permitted to assert the same claims a second time.  Significantly, the threshold issue of Travis's insurable interest was decided in the arbitration.  Plaintiffs clarified at oral argument that they do not dispute that the threshold insurable

---

[11]  As a functional matter, the collateral estoppel analysis is essentially the same under either state or federal law.  *See Mullins v. State of Tennessee*, 294 S.W.3d 529, 535 (Tenn. 2009) (stating the factors as follows: "(1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.").

[12]  Similarly, here the Court has determined that it is not necessary to address each argument raised by the parties as the Court finds Defendants are entitled to summary judgment on the grounds of collateral estoppel.

interest issue was adequately addressed during arbitration, and clearly this issue was necessary to the outcome of the arbitration. As such, the Court finds that these two factors weigh in favor of the application of collateral estoppel to bar Plaintiffs from relitigating here the same insurable interest issue decided in the arbitration.

**b.      The prior proceeding resulted in a final judgment**

Turning to the third factor, whether the prior proceeding resulted in a final judgment, arbitration proceedings have the same effect as judicial decisions and qualify as a prior proceeding for purposes of collateral estoppel. *See Turpin v. Love*, 1973 WL 16997, at *4 (Tenn. Ct. App. Aug. 14, 1973); *Bright v. Spaghetti Warehouse, Inc.*, No. 03A01-9708-CV-00377, 1998 WL 205757 (Tenn. Ct. App. Apr. 29, 1998) (applying collateral estoppel when prior proceeding was an arbitration); *see also Foster v. Windsor Republic Door, Inc.*, No. 1:10-cv-01081-egb, 2010 WL 6512343 (W.D. Tenn. Oct. 21, 2010); *Cincinnati Ins. Cos. v. Tennessee Log Homes, Inc.*, No. 1:05-CV-7, 2008 WL 2944914, at *6-7 (E.D. Tenn. July 25, 2008). No party has alleged that the arbitration award was not a final judgment on the merits, and this factor also weighs in favor of finding that collateral estoppel applies to bar Plaintiffs from relitigating herein the same issue decided in the arbitration.

**c.      The parties had a full and fair opportunity to litigate the issue**

As for the final factor, the Court must determine whether the party against whom estoppel is sought had a full and fair opportunity to litigate the insurable interest issue. The parties were heard on this factor at length during oral argument on the pending motions. Defendants argued that Plaintiffs were extensively involved in the arbitration process; that they had a full and fair opportunity to litigate all claims and brief the issues both before and after the hearing; that Plaintiffs

14

could have challenged the arbitration decision if they believed the arbitrators erred in some way, but they did not attempt to vacate the award; that the factual determination made by the arbitrators is binding; and that the arbitrators addressed all the issues presented regardless of whether they explicitly addressed the issues in the award, as the award states it resolved all claims. Plaintiffs essentially argued once more that because the arbitrators did not make factual determinations as to all issues raised, Plaintiffs should have the opportunity for judicial review of those additional issues. Plaintiffs further argued that although the insurable interest issue was adequately litigated and addressed at arbitration, it was the first time the denial of Travis's claims was based on that issue.

The record now contains a wealth of information on the subject of whether the arbitration was a full and fair opportunity to address the merits of the claims asserted in this matter.[13] The parties conducted discovery in the arbitration process and from the excerpts of the transcript before the Court, it appears the arbitration hearing fully addressed at least the following: the procurement of nursery crops planted at Cain Field and Bonita Farm, the transfer of nursery crops at the farms from Anthony and Catrenia to Travis, and the ownership of the land at Bonita Farm and Cain Field [Doc. 80-1 at PageID#: 611-14, 660, 674-76, 685-87]; Travis's sole source of income from his parents' nursery business, Dry Shave [*id.* at PageID#: 615, 637-38, 669-70, 681-83]; the insurance

---

[13] Defendants originally raised a collateral estoppel argument in a previously filed motion to dismiss, which the Court treated as a motion for summary judgment under Fed. R. Civ. P. 12(d) [Docs. 17, 46]. At the time the motion was denied, the Court had before it limited and disputed information. For example, the relationship between the Plaintiffs and the extent of the arbitration proceeding was unclear and the Court was not fully informed about the extent of discovery in the arbitration process. From the face of the arbitration award (one of the few relevant documents concerning the arbitration in the record at the time), it was not apparent whether the parties were the same, whether the issues presented were the same, or whether there was a sufficient opportunity to litigate the merits of the issues presented. The Court now has sufficient and undisputed facts to address the collateral estoppel argument.

15

application process, the forms involved (including those not signed by Travis), and the claim adjustment process [*id.* at PageID#: 616-21, 628-31, 647-55, 661-64]; Anthony and Catrenia's involvement in the insurance claim process [*id.* at PageID#: 656]; the operation of Cain Field and Bonita Farm, including the financial arrangements between Travis and his parents and information reported on tax returns regarding expenses and revenues [*id.* at PageID#: 632-45, 651, 657, 660, 669-84]; the family's attention to catalogs, insurance policy documents, and their practice for retaining records [*id.* at PageID#: 645-46, 658, 660, 670-74, 678, 690]; the possible confusion about the crops purportedly owned by Travis being listed under one of Anthony's insurance policies [*id.* at PageID#: 658-59]; an investigation into catalogs submitted by insurance agent Richard Mackie (the ground upon which Travis's insurance claim was denied)[14] [*id.* at PageID#: 622-27, 665-68]; the RMA's interpretation of an insurable interest in the crop and the effect of documents with invalid signatures [*id.* at PageID#: 692-700, 705-06, 713-14]; and basic information about the requirements to attach insurance coverage [*id.* at PageID#: 703-04, 710, 713].  Each witness was examined by multiple individuals and Travis testified on his own behalf [*id.* at PageID#: 608-10].

Travis is a Plaintiff in this lawsuit and was a key participant in and party to the arbitration. Travis is also the named insured.  As such, it was his insurable interest, if any, and his compliance with the insurance policy provisions at stake to determine if coverage existed.  Bonita Farm and Cain Field are merely trade names, not corporations or other legal entities, and there was no need for the

---

[14] The Court has referred to Travis's multiple "claims" throughout because Travis submitted claims under two insurance policies he contended covered the crop at the two separate farms. Because the policy covering Bonita Farms in Warren County had been previously cancelled by a form not signed by Travis, the Court refers to a single claim in this context because the denial of the claim under the other policy, which covered Cain Field in Grundy County, was initially explained in this fashion.

16

arbitration to include the trade names as parties, as the insurance policies affecting the nursery crop were not in either farm's name. Because Bonita Farm and Cain Field are merely trade names and not legal entities, any concerns about privity of the parties are not applicable. As for Anthony and Catrenia Wanamaker, neither are insured under the policies at issue. At oral argument, Plaintiffs conceded that Anthony and Catrenia have no independent claims in this matter if Travis's policy was properly voided. Thus, their participation in this lawsuit does not alter the Court's conclusion that the parties against whom estoppel is sought are the same.

After reviewing the evidence and considering the arguments, the Court finds the arbitration provided the parties against whom estoppel is sought with a full and fair opportunity to address the issues raised, specifically the issue of whether Travis had an insurable share in the crops. The arbitration process and hearing were quite extensive and fully addressed the facts and legal issues related to Travis's policies and subsequent insurance claims. During the three-day arbitration hearing, Travis was represented by an attorney; many witnesses, including Travis and his parents, testified and were questioned quite extensively by both sides; and the hearing covered in great depth all of the issues surrounding the denial of Travis's claims. As Defendants point out, Plaintiffs have never made any allegation that the award was subject to vacation due to any error by the arbitrators. Moreover, although Plaintiffs argue the issues are not the same because the arbitrators did not decide issues beyond the threshold and determinative issue of whether the policy was void, there was no need for the arbitrators to address any other issue once they decided a threshold issue that disposed of the need to make further factual determinations. Thus, the final factor also weighs heavily in favor of baring Plaintiffs from relitigating their claim that Travis had an insurable interest here.

Accordingly, the Court finds, as a matter of law under the undisputed facts, that collateral

estoppel bars Plaintiffs from relitigating in this Court the threshold issue determined in the arbitration: that Travis did not have an insurable share or interest in the crops resulting in the voidance of his crop insurance policies. Accordingly, Defendants are entitled to summary judgment.

## B. Plaintiffs' Motion

Although the Court has determined that Defendants are entitled to summary judgment on collateral estoppel grounds, there is one remaining argument asserted in Plaintiffs' motion the Court must consider, as it might survive the determination that the policy was properly voided. While Plaintiffs agreed at oral argument that none of the state law claims asserted against any of the Defendants in the Complaint would survive a determination that the policy was properly voided, in Plaintiffs' brief, they argue that Defendants should be estopped from voiding coverage because they accepted Travis's insurance applications without identifying any problems [Doc. 88 at PageID#: 1181-82]. Plaintiffs assert that it was Defendants' agent, Richard Mackie, who guided them through the application process and that Defendants are bound by Mackie's actions and advice [*id.* at PageID#: 1182-83].

Defendants argue that Travis was deemed to know the policy terms and cannot establish as a matter of law that he relied upon an insurance agent's instructions that would essentially waive terms of the insurance policy [Doc. 94 at PageID#: 1291-93]. Defendants further argue that Richard Mackie did not have actual or apparent authority to bind the insurance company by making statements in contravention of the policy terms and federal crop insurance program procedures, and that Plaintiffs therefore acted unreasonably in their reliance [*id.* at PageID#: 1293-96].

To address the issue of estoppel as it relates to Defendants, the Court must first address the issue of estoppel as it relates to the previously dismissed federal agencies (the FCIC, the RMA, or

18

the USDA). Pursuant to *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947), there is no estoppel against such federal governmental agencies in a case involving crop insurance policies. In *Merrill*, the plaintiff was told by an agent of the FCIC that he could insure the entire crop of spring wheat planted when, in fact, he could not insure the acres planted on reseeded winter wheat. *Id.* at 382. The plaintiff discovered the agent erred when a drought destroyed most of the crop and he unsuccessfully attempted to collect on the loss. *Id.* The United States Supreme Court held that the insurance regulations were binding on all who sought insurance under the FCIA regardless of actual knowledge, noting the duty of the courts "to observe the conditions defined by Congress for charging the public treasury" and uphold the terms and conditions imposed by Congress to create government liability for crop insurance policies. *Id.* at 385.

The principles outlined in *Merrill* have been employed to prevent litigants from asserting estoppel arguments against the government in a variety of factual scenarios, and it is generally settled that the United States cannot be estopped by acts of its individual officers or agents. *See Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990); *United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1108 (6th Cir. 1984). The reasoning for the prohibition against estoppel stems from a "concern that government agents. . . by their statement or conduct might waive or revise the laws as enacted by Congress. . . [and] might . . . give away assets or funds that the government holds for the public good under congressional mandate." *Housing Authority of Elliott Cnty. v. Bergland*, 749 F.2d 1184, 1190 (6th Cir. 1984). Courts have acknowledged, however, that estoppel might arise in circumstances involving "affirmative misconduct" by the government. *River Coal*, 748 F.2d at 1108; *Rogers v. Tenn. Valley Authority*, 692 F.2d 35, 37-38 (6th Cir. 1982).

In the instant case, the insurance agent alleged to have inadequately guided Plaintiffs through

the insurance process was an agent of Defendants, not the federal agencies. This agent's alleged failures in the application process would not fall under any exception for affirmative misconduct because he was not a government agent and, as recognized in *Merrill*, Plaintiffs are charged with knowledge of the applicable regulations when dealing with the government (and a government sponsored program such as crop insurance). The federal entities, therefore, cannot be estopped and, as earlier noted, they were previously dismissed from this action.

In the context of federally reinsured crop insurance policies, courts have generally held that the private insurance company is still protected by the general prohibition against estoppel that applies to the federal government because "[t]he statements of an insurance company employee cannot be applied to extend coverage where there is none because the doctrine of estoppel cannot extend coverage beyond that authorized by the policy." *William J. Mouren Farming, Inc. v. Great Am. Ins. Co.*, No. CV F 05-0031 AWI LJO, 2005 WL 2064129, at *10 (E.D. Cal. 2005) (citing *Mann v. FCIC*, 710 F.2d 144, 147 (4th Cir. 1983)). In *Walpole v. Great Am. Ins. Co.*, 914 F. Supp. 1283 (D.S.C. 1994), the court addressed the very question of whether the prohibition against estoppel outlined in *Merrill* would apply to reinsured policies (and private insurance companies) as well as FCIC-issued policies, and the court determined that the statements at issue, although made by defendant insurance company's adjuster, could not extend coverage where coverage did not exist because of the estoppel doctrine, thereby adopting the *Merrill* principles as applicable to the private insurance company defendant. *Id.* at 1290 (citing *Mann v. FCIC*, 710 F.2d 144, 147 (4th Cir. 1983)).

As to the crop insurance policy at issue, then, if the policies were properly voided, Defendants cannot be estopped from denying coverage based on any reliance by Plaintiffs on

Defendants' confirmation that insurance attached. As the Court has determined that collateral estoppel bars the Plaintiffs from relitigating the arbitrators' decision that Travis had no insurable interest or share in the crop thus voiding the policy, Defendants cannot be estopped from denying coverage. Therefore, no claims remain against any of the Defendants in this action.

## IV.    CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment [Doc. 82] is **GRANTED**, Plaintiffs' motion for summary judgment [Doc. 81] is **DENIED,** and Great American's separate motion for summary judgment [Doc. 86] is **DENIED AS MOOT**. There being no other issues in this case, the Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED.

ENTER:


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE